# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.:  24-cv-100-AJB-DDL <br><br> **REPORT AND RECOMMENDATION FOR ORDER REMANDING COMMISSIONER'S DECISION** |

The undersigned respectfully submits this Report and Recommendation to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1.c.  Plaintiff Teresa P. seeks judicial review of the Social Security Commissioner's denial of her application for disability benefits pursuant to 42 U.S.C. § 405(g) and requests remand to the Social Security Administration for further proceedings, "including a *de novo* hearing and a new decision."  Dkt. No. 1. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is not supported by substantial evidence, and therefore **RECOMMENDS** the District Court **REMAND** the Commissioner's decision to the Social Security Administration for further proceedings consistent with this Order.

1

# I.

# BACKGROUND

## A. Plaintiff's Application for Disability Benefits

On or around June 3, 2021, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("the Act"). *See* Certified Administrative Record ("AR") [Dkt. No. 7] at 33, 44, 208-09. Plaintiff alleged she had been unable to work since December 14, 2019, due to various mental and physical impairments. *Id*. After her application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on April 28, 2023, before ALJ Kevin Messer. *Id*. at 51-84. Plaintiff appeared with counsel and gave testimony. *Id*. The ALJ issued an unfavorable decision on July 11, 2023, having concluded "[b]ased on the application for a period of disability and disability insurance benefits . . . [Plaintiff] was not disabled under [the Act] through June 30, 2021, the last date insured." *Id.* at 44. On November 28, 2023, the Appeals Council denied review, and the ALJ's decision became final. *See id*. at 7-9. This appeal timely followed.

## B. Summary of ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The ALJ followed the sequential five-step evaluation set forth in the regulations in adjudicating Plaintiff's disability claim.[1] *See generally* AR at 35-42.

---

[1] The five-step sequential evaluation is the same for both disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1520; *id*. § 416.920. The ALJ must determine the following: at step one, whether the claimant is

At step one, the ALJ found Plaintiff had "last met the insured status requirements of [the Act] on June 30, 2021. *Id.* at 35. He found Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 14, 2019 through her date last insured of June 30, 2021." *Id.* Although Plaintiff worked after the alleged disability onset date, "this work activity did not rise to the level of substantial gainful activity" because Plaintiff's earnings did not meet the threshold for substantial gainful activity. *Id.*

At step two, the ALJ found Plaintiff had the following severe impairments: "cervical and lumbar strain and sprain status post cervical laminectomy, cervical radiculopathy, and posttraumatic headache syndrome."[2] *Id.* at 36. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id.* at 37-38.

---

engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three, whether the impairment meets or is medically equal to an impairment identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether the claimant can perform their past relevant work; at step five, whether the claimant can make an adjustment to other work. If the claimant is found not disabled at any step, the analysis does not proceed to the next step.

[2]    The ALJ found Plaintiff's alleged physical impairments of irritable bowel syndrome with diarrhea and bilateral myopia nonsevere. AR at 36. The ALJ further found Plaintiff's mental impairment of ADHD nonsevere after completing the "Paragraph B" analysis: rating Plaintiff's degree of limitation in four functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself) using a five-point scale (none, mild, moderate, marked, and extreme). *Id.* at 36-37; 20 C.F.R. § 404.1520a. Plaintiff does not challenge these nonsevere findings.

Proceeding to step four, the ALJ determined Plaintiff:

> had the residual functional capacity to perform light work . . . except the individual can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl. She can frequently handle and finger with dominant right upper extremity. Further, the individual must avoid concentrated exposure to hazards such as operational control of moving machinery and unprotected heights. The individual cannot perform job duties that require precise depth perception such that she is unable to make accurate judgments of distance and speed.

AR at 38.

The ALJ reviewed the medical opinions and administrative medical findings in the record. *Id.* at 39-42. The ALJ found the opinions of two state agency medical consultants "not persuasive because they are based on a review of a partial record" and "did not consider and review the claimant's subsequent treatment records, which support finding the claimant more limited than the state agency medical consultants found." *Id*. at 41-42. The ALJ also found the opinion of Vrijesh Tantuwaya, M.D., "partially persuasive because it is supported by the treatment notes, and consistent with the lifting limitations found herein." *Id.* at 41. But the ALJ found Dr. Tantuwaya's opinion was "not consistent with the totality of the evidence, which shows the claimant has neck and back pain, and headaches." *Id.*

As for administrative medical findings, the ALJ discussed records noting Plaintiff's conservative treatment until her July 2019 surgery, and those noting improvement after the surgery. *Id.* at 39-40. The ALJ reviewed treatment notes from June 2020 and September 2020 appointments "showing no edema, full cervical and lumbar spine range of motion, no spasm or tenderness of paraspinal or posterior shoulder muscles or sacroiliac joints, negative straight leg raising, and normal motor strength and rapid movements . . . ." *Id.* at 40. The ALJ cited records

detailing Plaintiff's December 1, 2020 and December 21, 2020 evaluations, as well as an "EMG/Nerve Conduction Study taken on December 23, 2020 show[ing] chronic right C6 radiculopathy." *Id.* And the ALJ discussed notes from telemedicine visits in February 2021, April 2021, June 2021, and August 2021. *Id.*

The ALJ also considered Plaintiff's subjective testimony regarding her limitations in formulating the RFC. *Id.* at 41. Having reviewed the medical records, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because they are not fully supported by the objective medical evidence and other relevant documented evidence." *Id.*

At step four, the ALJ concluded Plaintiff was unable to perform any of her past relevant work as a pharmaceutical representative and tutor. *Id.* at 42. At step five, the ALJ determined an individual of Plaintiff's age, education, work experience, and RFC would be able to perform jobs which exist in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was "not disabled" within the meaning of the Act. *Id.* at 44.

## II.

## ISSUES PRESENTED

Plaintiff states there is one issue on appeal, but really raises three:

1) Whether the ALJ failed to "build a logical bridge between" the RFC and the medical records;
2) Whether the ALJ improperly "rendered a lay interpretation of the raw medical evidence in crafting" Plaintiff's RFC; and
3) Whether the ALJ's duty to develop the record was triggered because some records he relied upon were stale or inconsistent with later medical records.

*See* Dkt. No. 10 at 8-12.

## III.

## **STANDARD OF REVIEW**

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[3] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*. This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

---

[3] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, footnotes, and parallel reporter citations are omitted from citations.

## IV.

## DISCUSSION

**A. The ALJ Failed to Build a Logical Bridge Between His RFC and the Record**

With the foregoing legal standards in mind, the Court addresses each disputed issue.

As a first charge of error, Plaintiff asserts the ALJ failed "to build a logical bridge between the highly-specific RFC he crafted" and the evidence in the record. Dkt. No. 10 at 11. Because the unfavorable decision does not permit the Court to "reasonably discern[]" the ALJ's path from the record to the RFC, the Court agrees. *Brown-Hunter*, 806 F.3d at 492.

"While an ALJ's decision need not be drafted with 'ideal clarity,' at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to 'allow[] for meaningful review.'" *Gomez-Perez v. Berryhill*, No. SACV 16-1174 JC, 2017 WL 810275, at *2 (C.D. Cal. Feb. 28, 2017) (quoting *Brown-Hunter*, 806 F.3d at 492). District courts have interpreted this requirement to mean the ALJ "must build an 'accurate and logical bridge from the evidence to her conclusion' so that [the reviewing court] may assess the validity of the agency's ultimate findings." *Perry v. Berryhill*, No. 15-CV-04566-DMR, 2017 WL 840382, at *6 (N.D. Cal. Mar. 3, 2017) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). The Court finds that the ALJ did not build such a bridge here.

The ALJ determined that Plaintiff had the RFC to perform light work, with further limitations on climbing ramps, stairs, ladders, ropes, and scaffolds; handling and fingering with the right upper extremity; exposure to hazards such as operational control of moving machinery and unprotected heights; and performing job duties that require precise depth perception. AR at 38. The undersigned can reasonably discern the ALJ's path from the record to the "light work" limitation, as the ALJ found Dr. Tantuwaya's medical opinion "preclud[ing] the claimant from lifting any greater than 20 pounds" partially

persuasive. *Id.* at 41. The same cannot be said for the other limitations in Plaintiff's RFC. As discussed above, the ALJ found the medical opinions of state agency medical consultants Gary Spitz, M.D., and A. Khong, M.D., not persuasive. *Id.* at 41-42. This means the ALJ must have relied on administrative medical findings in the record to determine the remainder of the limitations in the RFC. And the ALJ does not provide reasoning sufficient to allow the undersigned to reasonably discern the path from those administrative findings to the specific limitations discussed in the RFC.

      The ALJ cited to or summarized the following administrative medical records before announcing the RFC: Plaintiff's history of conservative treatment until July 2019, *id.* at 40 (citing *id.* at 475-96); Plaintiff's improved condition after her July 2019 surgery, *id.* at 40 (citing *id.* at 361-66); findings in June 2020 and September 2020 "showing no edema, full cervical and lumbar spine range of motion, no spasm or tenderness of paraspinal or posterior shoulder muscles . . . and normal motor strength and rapid movements," *id.* at 40 (citing *id.* at 510-32); diagnostic impressions in December 2020 showing "cervical radiculopathy . . . cervical sprain and strain . . . disturbance in sensation . . . lumbar sprain and strain . . . [and] post-traumatic headaches," *id.* at 40 (citing *id.* at 602-05); "unremarkable" physical examinations on February 11, 2021; April 27, 2021; and June 14, 2021, *id.* at 40 (citing *id.* at 431-39); and Plaintiff's testimony at the April 28, 2023 hearing regarding her ability to run errands, do household chores, and participate in the daily activities of life, *id.* at 41 (citing *id.* at 56-76). The ALJ's review of these records appears thorough and takes up most of pages 40 and 41 of the AR. But after reviewing these records, the ALJ states only that "[t]he limitations caused by these impairments are reflected in the residual functional capacity." *Id.* at 40. There is no discussion of how these records may reasonably result in the specific limitations on climbing, controlling machinery, handling and fingering, and depth perception that the ALJ determined were part of Plaintiff's RFC. "Although the

ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter*, 806 F.3d at 495. The Court cannot "speculate as to the grounds for the ALJ's conclusions." *Id.* Because the ALJ's explanation is lacking in the ways discussed above, any finding that the RFC limitations—except for the light work limitation—were supported by substantial evidence would require such impermissible speculation.

Therefore, the undersigned recommends the District Court direct the Commissioner on remand to (1) explain his reasoning in a way that allows the Court to reasonably discern the ALJ's path from the record to the specific limitations in the RFC and, if necessary, (2) reevaluate Plaintiff's entitlement to disability benefits for the period December 14, 2019 (the alleged onset date) to June 30, 2021 (the date last insured).

**B. The ALJ Did Not Improperly Render a Lay Interpretation of Medical Evidence in Crafting Plaintiff's RFC**

As a second charge of error, Plaintiff asserts the ALJ's "failure to develop the record with a consultative examination or medical expert testimony necessitated that he rely on his own lay interpretation of Plaintiff's medical imaging" to determine the RFC. Dkt. No. 10 at 11. The Court disagrees.

"It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "Indeed, an ALJ's RFC determination need not reflect any particular provider's opinion precisely." *Howell v. Kijakazi*, No. 20-CV-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 14, 2022) (citing *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010)). But an ALJ may not interpret raw medical data in formulating an RFC. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (remanded where the hearing examiner consulted medical textbooks to make his own assessment of the claimant's physical condition);

*Mack v. Saul*, No. 1:18-CV-01287-DAD-BAM, 2020 WL 2731032, at *2 (E.D. Cal. May 26, 2020) (remanded where the ALJ determined the RFC after considering MRIs and radiological studies absent a doctor's opinion as to the meaning of those studies); *Escudero v. Comm'r of Soc. Sec.*, No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (remanded where ALJ based the RFC on his own consideration of x-rays and records regarding the plaintiff's diabetes diagnosis without any medical opinion in the record).

Plaintiff argues that because the ALJ did not find the medical opinions in the record persuasive, he must have interpreted the medical data himself—improperly as a layperson—to determine the RFC. The Court disagrees. First, although the ALJ found the opinions of both state agency medical consultants "not persuasive," he did find Dr. Tantuwaya's opinion "partially persuasive because it is supported by the treatment notes, and consistent with the lifting limitations" in the RFC. AR at 41. Because the ALJ was guided by a medical opinion here, even if only in part, "any argument that the ALJ's duty to develop the record was triggered based on a wholesale rejection of all . . . medical opinion evidence is distinguishable from this case." *Garza v. Kijakazi*, No. 121CV00419ADAHBK, 2023 WL 402396, at *4 (E.D. Cal. June 15, 2023); *cf. Howell*, 2022 WL 2759090, at *10 (S.D. Cal. July 14, 2022) (ALJ's duty to develop the record triggered where the ALJ rejected all medical opinion evidence, and the record did not contain any interpretation of Plaintiff's functional limitations). Second, the Court is persuaded by an opinion issued in this District that rejected a similar argument:

> [F]ederal regulations require the ALJ to base the RFC determination on all of the relevant medical and other evidence in the case record.[4] ALJs are responsible for translating and incorporating clinical findings into

---

[4] 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

a succinct RFC.[5]  ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make [an] RFC determination.[6] While some courts in this circuit have held that an ALJ is simply not qualified to interpret raw medical data in functional terms, here, the ALJ merely summarized the medical evidence and did not personally interpret the results of any medical tests performed on Plaintiff, such as an x-ray or EEG.  Nor did the ALJ play doctor and make . . . independent medical findings.[7]  Each of the ALJ's conclusions was reasonably supported by . . . the objective medical record.

*Reese v. Kijakazi*, No. 20-CV-2524 JLS (JLB), 2022 WL 16630587, at *8 (S.D. Cal. Sept. 7, 2022).

The same is true here.  Although the ALJ did reference an "EMG/Nerve Conduction Study" and an MRI of Plaintiff's brain, he did so in his summary of the medical evidence; he did not appear to personally interpret the results of either exam or incorporate them into the RFC.  AR at 40–41. *See also Ginger R. v. Kijakazi*, No. 20-CV-02524-JLS-JLB, 2022 WL 2713352, at *9 (S.D. Cal. July 13, 2022) ("it was well within the ALJ's purview to evaluate medical evidence without a treating source opinion interpreting it"); *Karen E. v. Berryhill*, No. ED CV 17-918-SP, 2019 WL 1405835, at *3 (C.D. Cal. Mar. 27, 2019) ("Certainly it may have been helpful for the ALJ to retain a medical expert to review these records, but it was not necessarily required where, as here, the ALJ reviewed the substantial medical evidence that supported his RFC determination with respect to plaintiff's lower back pain.").  Therefore, the undersigned recommends the District Court find Plaintiff has not established harmful error because the ALJ did not interpret raw medical data to determine Plaintiff's RFC.

---

[5]  *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

[6]  *Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021).

[7]  *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

## C. The ALJ Had No Duty to Further Develop the Record

As a third charge of error, Plaintiff asserts the ALJ's "duty to develop the record was triggered" because "significant treatment and medical developments postdate Dr. Tantuwaya's assessment." Dkt. No. 10 at 10. Specifically, Plaintiff cites to the January 11, 2021, notes of Alfred Steinberger, M.D., and the February 1, 2021, notes of Larry Presant, M.D. AR at 360, 442-43. Dr. Steinberger opined that Plaintiff's MRI report revealed "right-sided foraminal pathology, consistent with [Plaintiff's] symptomatology," and Dr. Presant assessed Plaintiff with chronic neck pain with a history of cervical spinal surgery and chronic postprocedural pain, and described Plaintiff's "status post cervical laminectomy" as "failed." *Id.* The Court disagrees that these records triggered the ALJ's duty to further develop the record.

The plaintiff is "ultimately responsible for providing the evidence to be used in making the RFC finding," but the ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Contrary to Plaintiff's position that the record is necessarily inadequate because Plaintiff received additional medical care after Dr. Tantuwaya's opinion was rendered, the "mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record." *Stivers v. Saul*, No. 19-cv-01110-BAM, 2021 WL 1193794, at *8 (E.D. Cal. Mar. 30, 2021). The Administrative Record is about 630 pages and includes Plaintiff's complete medical treatment records from various providers and medical facilities between 2017 and 2022. Although the records Plaintiff cites do

postdate Dr. Tantuwaya's assessment, they are contemporaneous with other administrative medical records discussed by the ALJ in the unfavorable decision. *See, e.g.*, AR at 40 (citing *id.* at 602-05, 431-39) (medical records and treatment notes from December 2020, February 2021, April 2021, and June 2021). Thus, the ALJ considered other significant evidence after Dr. Tantuwaya's July 2019 assessment, and, indeed, even after Dr. Steinberger's February 2021 notes. As such, the ALJ did not rely, as Plaintiff argues, solely on "stale" medical records. Although the ALJ failed to build a bridge between the medical records and the RFC, as analyzed in a section above, the mere existence of additional treatment notes postdating Dr. Tantuwaya's assessment does not underpin that error, nor does it compel the ALJ to further develop the record.

Furthermore, at the April 28, 2023 hearing, Plaintiff's counsel stated "[t]he record is complete to the best of my knowledge." AR at 54. The ALJ "was not obligated to further develop the record where Plaintiff's counsel affirmatively stated that the record was complete." *Ginger R.*, 2022 WL 2713352, at *7 (S.D. Cal. July 13, 2022); *see also Bertrand v. Astrue*, No. 108CV00147BAKDLB, 2009 WL 3112321, at *8 (E.D. Cal. Sept. 23, 2009) ("Had Plaintiff thought that the report was outdated and no longer accurate, Plaintiff could have asked the ALJ to consider ordering a further consultative examination. She did not do so."); *Giddings v. Colvin*, No. 1:13-CV-01477-SKO, 2015 WL 1020871, at *6 n.9 (E.D. Cal. Mar. 9, 2015) ("Plaintiff's counsel's agreement to close the record at the time of the ALJ's hearing without seeking to hold the record open to obtain treating physician opinions or requesting that a compensation examination be obtained . . . diminishes the persuasiveness of Plaintiff's argument . . . that the record was not fully developed."). For these reasons, the undersigned recommends the District Court find Plaintiff has not established harmful error as to the ALJ's duty to further develop the record.

/ / /

# V.

# **CONCLUSION**

For the foregoing reasons, the Court concludes the ALJ's decision was not supported by substantial evidence.  The Court expresses no view as to whether Plaintiff will succeed in proving that she is entitled to benefits; it holds only that the ALJ must provide further reasoning as to how the evidence supports the RFC so the Court may determine whether that conclusion is supported by substantial evidence.  The undersigned accordingly **RECOMMENDS** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation in its entirety and (2) granting Plaintiff's request for remand for further administrative proceedings consistent with this Order.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed by not later than **February 13, 2025**.  Any response to a party's objections must be filed by not later than **February 20, 2025**.  Failure to timely file objections may waive the right to raise those objections on appeal.  *See Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

**IT IS SO ORDERED.**

Dated: January 29, 2025

_____
Hon. David D. Leshner
United States Magistrate Judge